[No. 14739.   Department One. — August 25, 1892.]

GEORGE S. LOCKE, RESPONDENT, v. C. S. MOULTON ET AL., APPELLANTS.

DEED INTENDED AS MORTGAGE — PRESUMPTION — EVIDENCE — FINDING — REVIEW UPON APPEAL. — The presumption arising from the execution and delivery of a deed absolute in form is, that it is made in pursuance of an agreement to sell, and vests an absolute title in the grantee; and though parol evidence is admissible to show that it was intended as a mortgage, such intention must be shown by satisfactory proof; but where the evidence adduced on both sides satisfactorily shows that the deed was given to secure the payment of money, a finding that it was not intended as a mortgage will be set aside upon appeal.

ID. — EVIDENCE — ASSESSMENT ROLL. — Upon an issue as to whether a deed absolute in form was intended as a mortgage, the assessment-book of the county, showing that the grantor had listed personal property only, is properly admitted in evidence, as tending to show that the grantor did not consider the land his at the time of such listing, though inconclusive, and susceptible of explanation.

ID. — MEMORANDUM-BOOK OF DEFENDANT — ENTRIES AT DICTATION OF PLAINTIFF — ADMISSION. — Entries in a memorandum-book of the defendant, made at the dictation of the plaintiff, are admissible in evidence, as an admission of the plaintiff.

ID. — SUBSEQUENT DEED TO THIRD PARTY — POSSESSION. — The fact that the grantor of the deed intended as a mortgage has subsequently conveyed the premises and delivered possession thereof to a third party cannot affect the question whether the deed was intended as a mortgage.

ID. — PROMISE TO PAY MORTGAGE DEBT — WRITING NOT REQUIRED. — It
is not necessary, in order to show that a deed absolute in form was
intended as a mortgage, to prove a written promise upon the part of the
alleged mortgagor to pay the mortgage indebtedness.

ID. — EJECTMENT — DEFENSE OF MORTGAGE — OFFER TO PAY MORTGAGE
DEBT. — In an action of ejectment by the grantee of land against the
grantor, where the grantor sets up as a defense that the deed was in-
tended as a mortgage, it is not necessary that he pay or offer to pay the
amount of the alleged mortgage debt, which he admits to be due, in or-
der to avail himself of such defense.

ID. — RIGHT OF POSSESSION — TITLE TO MORTGAGED PREMISES — DEFENSE
TO EJECTMENT — PLEADING. — A deed absolute in form, if intended as a
mortgage, does not pass the title to the mortgaged premises, and no
right of possession is conferred by it when not authorized by express
terms; and under a denial of the title and ownership of the plaintiff
the defendant may show, as a defense to an action of ejectment based
upon the deed, that it was intended as a mortgage, without being re-
quired to plead an equitable defense.

NEW TRIAL — NOTICE OF MOTION. — A notice of a motion "to set aside and
vacate the judgment rendered and entered herein, and to grant a new
trial," is a sufficient notice of motion for a new trial. If the notice dis-
tinctly and unmistakably gives the information that a new trial is asked
for, it is sufficient.

APPEAL from a judgment of the Superior Court of
San Joaquin County, and from an order denying a new
trial.

The facts are stated in the opinion.

*Carter & Smith*, for Appellants.

Whether a deed absolute in form is a mortgage is a
question of intention, to be determined from all the
facts and circumstances of the transaction, taken in con-
nection with the acts of the parties after the execution
of the deed. (*Montgomery* v. *Spect*, 55 Cal. 352; *Hus-
heon* v. *Husheon*, 71 Cal. 407.) When an absolute con-
veyance has been made upon an application for a loan,
and an agreement is made to reconvey upon payment
of the money advanced, the transaction is a mortgage.
(1 Jones on Mortgages, sec. 266; *Miller* v. *Thomas*,
14 Ill. 428; *Owen* v. *Blake*, 44 Ill. 136; *Horn* v. *Keteltas*,
46 N. Y. 605; *Fiedler* v. *Darrin*, 50 N. Y. 441.) The fact
that interest is payable by the terms of the contract is
evidence of a mortgage. (*Honore* v. *Hutchings*, 8 Bush,

687; *Murphy* v. *Culley*, 1 Allen, 107; *Farmer* v. *Grose*, 42 Cal. 169; *Harbison* v. *Houghton*, 41 Ill. 522.) The continued possession of the grantor is a circumstance tending to show a mortgage. (*Clark* v. *Finlon*, 90 Ill. 246; Jones on Mortgages, sec. 329; *Daubenspeck* v. *Platt*, 22 Cal. 330.) Inadequacy of price is another circumstance tending to show a mortgage. (*Campbell* v. *Dearborn*, 109 Mass. 130; 12 Am. Rep. 671; Jones on Mortgages, sec. 329; *Montgomery* v. *Spect*, 55 Cal. 356.) Even when the circumstances surrounding the transaction leave the intention doubtful, the court will favor construing the instrument to be a mortgage. (*Sears* v. *Dixon*, 33 Cal. 326; Jones on 'Mortgages, sec. 279; *Hickox* v. *Lowe*, 10 Cal. 197; *Cornell* v. *Hall*, 22 Mich. 377; *Pensoneau* v. *Pulliam*, 47 Ill. 58; *Trucks* v. *Lindsey*, 18 Iowa, 504.)

*L. W. Elliott*, for Respondent.

The motion is to set aside the judgment; but a motion for a new trial cannot be based on a motion to set aside the judgment. (*Sawyer* v. *Sargent*, 65 Cal. 259.) The fact that the defendant made no promise to repay the plaintiff, and had entered into no written agreement to that effect, while not conclusive, was sufficient to satisfy the court that the transaction was not a mortgage. (*Conway* v. *Alexander*, 7 Cranch, 237.) The defendant is not entitled to be heard, as he has never offered to pay what he admits to be due. (*Hughes* v. *Davis*, 40 Cal. 117; *Pico* v. *Gallardo*, 52 Cal. 206.)

HAYNES, C. — Appeal from a judgment rendered in favor of the plaintiff, and from an order denying defendants' motion for a new trial.

The complaint was in ejectment to recover certain lands therein described, alleging ownership in fee for five years last past. A general demurrer to the complaint was properly overruled.

The defendants answered, and set up three separate defenses: 1. Denied plaintiff's ownership and right of possession, admitted the possession of S. M. McCloud,

denied that it was unlawful, and denied that either of the other defendants were in possession. 2. Alleged that defendant Moulton was the owner in fee of the demanded premises from April, 1870, to May 15, 1890, and during that time was in possession; that on October 2, 1885, Moulton executed and delivered to plaintiff what purported to be a grant, bargain, and sale deed, which was duly acknowledged and recorded, and which, although in form a deed absolute, was executed and delivered as, and was intended to be, a mortgage to secure the payment of $6,127.50, with interest at ten per cent per annum, in which sum Moulton was then indebted to plaintiff; that Moulton was then in possession of said land, and so continued in possession until July 15, 1890, when he conveyed to defendant S. M. McCloud, who since that time has been in possession and entitled to the possession of the lands in controversy. 3. The third defense alleged adverse possession under a written instrument by defendant McCloud and his grantor, Moulton, for more than five years.

Defendants prayed that said instrument be decreed to be a mortgage, and that defendants recover costs.

The court found that all the allegations of the complaint were true; that Moulton was not the owner; that said instrument was intended to be and was a deed; that it was not given to secure any sum of money; that prior to the delivery of said deed, Moulton was indebted to the plaintiff, which indebtedness was part of the consideration, and the remainder of the consideration was paid in cash; and that neither of the defendants have held adversely to plaintiff.

The principal question presented by appellants is, whether the evidence justified the finding that the deed made by Moulton to plaintiff October 2, 1885, was not a mortgage.

The plaintiff introduced in evidence said deed, which expressed a consideration of $1,500, but subject, however, to a deed of trust before that time made by Moulton

to secure to the Stockton Savings and Loan Society the payment of $4,240, and interest.

The plaintiff then testified as follows: "I know the land mentioned in the complaint. I demanded possession of the land from Mr. Moulton. He was upon the land at the time; I went there a short time before I commenced this suit. I went there to notify him to leave. He said he would n't leave, I think."

The plaintiff offered no other evidence (except as hereinafter noticed), either in chief or in rebuttal.

The land in question consisted of about 320 acres.

The defendant Moulton testified that he was nearly seventy-two years of age; that he had resided on the land in question "going on twenty-one years," and resided there in October, 1885, and remembered the making of what purported to be a deed of said land to the plaintiff in October, 1885. "The agreement between us at that time was this: I borrowed some money of him, and gave him a deed to secure him, and whenever I paid him the principal and interest I was to have the deed back again. I saw Mr. Locke about it at his ranch; I went there to see him. I told him I wanted to pay some bills, and he spoke of the mortgage, and I told him the bank had a mortgage on it, and he agreed to take it up and I should pay him. He should let me have fifteen hundred dollars, barring the five hundred dollars I owed him, and he should take up the mortgage, and I should pay him ten per cent interest, and whenever I paid him principal and interest I should have the deed back, and that S. M. McCloud was present and heard all the conversation." The witness further testified, in substance, that he had talked with Mr. Locke about it several times since; that he wished plaintiff to reduce the interest, and plaintiff thought he could n't or would n't, but witness could not recollect all that was said; that plaintiff never called it his ranch, and all he ever wanted or claimed was the principal and interest; that witness thought he could get the money for eight per cent, but thought he would call to see plaintiff first, to see if he would let him have

it for eight per cent; and at one time witness wanted to get a bond so as to raise the money, and plaintiff said he had better let it be as it was.

Upon cross-examination, Moulton testified that he did not give a note; that he thought the amount he was to repay plaintiff was six thousand one hundred dollars; that he could n't tell the amount; that he made no memorandum; that his memory was short; that he knew all about it at the time, but had forgotten; that he thought he had it down in his memorandum-book which Mr. McCloud had made; that the interest was paid right along by Mr. McCloud, who had the ranch; that he did not rent the place from plaintiff; that he gave a note for the interest, and a mortgage on the crop to secure the interest, the note being for twelve hundred dollars. The note and mortgage were made January 8, 1886.

The witness was unable to explain why the note was for nearly twice the amount of one year's interest, and in reply to the question put by plaintiff's counsel, "Did n't you mortgage the crop for the rent money?" answered, "Yes, for the first season"; but later said it was not to secure rent, but to secure the interest; that other creditors might come in, attach the crop, and plaintiff would n't get any interest, — that he had always claimed the land; always lived there.

In reply to a question put by plaintiff's counsel, the witness said he never swore that it was not his land. Witness was then shown the assessment-book of San Joaquin County for 1886, and admitted that the signature looked like his. Plaintiff then offered in evidence said assessment, to which defendants objected, as will be noticed hereafter. The objection being overruled, the said assessment list was read in evidence, and showed only some personal property amounting to sixty-five dollars assessed to witness. The witness said he did not recollect why he did n't put in the land; that he wanted to get a bond for a deed, because " I could n't get it unless he signed it "; that he tried to get plaintiff to give McCloud a bond for a deed, so they could either sell

or get the interest cheaper; that he did n't understand whether the only way to remove a mortgage was for the mortgagee to make a deed.

"Q. You say he got a certain share of the grain each year as rent? A. Yes; as interest. He got half the grain to pay him for interest, and if there was anything over it went on the principal."

S. M. McCloud, one of the defendants, testified that he had resided on the land in question about twenty years; that he was present at the conversation at plaintiff's ranch, testified to by defendant Moulton; that Moulton wanted the money, and wanted to mortgage the land; that Locke said he would n't take a mortgage, but that if he would give him a deed, he would give Moulton the ranch back when he paid the principal and interest. Mr. Moulton said he wanted to pay some bills, and accepted the proposition, with the understanding that he, Locke, should give the place back on paying the principal and interest at ten per cent per annum. At another time, the witness said he went with Mr. Moulton to see plaintiff, when Moulton told Locke to give the witness the same agreement he had with him, — that witness was to take care of him, and Mr. Locke said he would, or words to that effect; that he, the witness, had other conversations with Locke in regard to this transaction when he made settlements with him for the interest on that property, and for seed and feed that witness was to pay him for; that he had settlements with plaintiff from plaintiff's books in 1888 and 1889; that all the settlements he had related to the ranch in question; that in February, 1889, witness had a conversation with plaintiff in presence of Dr. Barber, in which witness asked plaintiff if he would give him the ranch on payment of the money and interest, and plaintiff replied, "Yes, I guess so"; that in 1890, he asked Locke to tell him the amount of the mortgage on that ranch, that he thought he could get the money; that plaintiff replied he could n't now, but to come over to the house and he would; that the crop mortgage given in January, 1886, for twelve

hundred dollars, was to secure the interest, and for whatever seed and feed he might want, and that that note had been settled.

Defendants further put in evidence the account kept by plaintiff in his books, entitled "M. McCloud & Ranch in account with G. S. Locke," under which C. S. Moulton and M. McCloud were charged, under dates of October 2 and 3, 1885, with sundry notes paid to other parties, also several items of cash and checks, and among them "Making deed, $3"; "Recording Moulton deed, $1.50"; "Recording trust deed to G. S. Locke, $3"; and "Payment of trust deed to bank, $4,624.50"; the whole amounting to $6,127.50. This account further shows, among other items relating to feed, seed, interest on other items, etc., an annual charge of interest on the original amount of $6,127.50 for each year down to October 13, 1890, and under date of May 30, 1887; and also, in the year 1890, he charges for taxes paid; but whether these taxes were paid on the land does not appear.

A. J. Larsen, another witness for defendants, testified that about eighteen months before the trial he saw plaintiff and asked him if he wanted to sell the land in question, "and he said I would have to see McCloud, — that he had lent some money and got the land, and all he wanted out of it was his money and interest, and wanted me to go and see McCloud about it."

M. G. Flanders corroborated the testimony of defendant McCloud as to the conversation with plaintiff in the presence of witness.

The defendants also introduced evidence tending to show that the value of the land in question at the time of the transaction between plaintiff and defendant Moulton, in October, 1885, was about thirty-five dollars per acre, amounting to some four thousand five hundred dollars more than was paid by plaintiff.

Upon the evidence in this case, the findings of the court that the deed was absolute in fact as well as in

form, and was not given to secure a loan, cannot be sustained.

The presumption arising from the execution and delivery of a deed absolute in form is, undoubtedly, that it is made in pursuance of an agreement to sell, and vests an absolute title in the grantee; and this court, while holding that a deed absolute in form may be shown by parol to have been intended as a mortgage, has sufficiently protected purchasers in fact, by requiring satisfactory proof that the deed was intended as a security for the payment of money, or the performance of an act by the grantor.

At the same time the court has been watchful against all schemes of money-lenders to deprive unfortunate debtors of their lands at less than their value, under the claim that the transaction was a purchase, and not a loan, and equity has not unfrequently gone further, and relieved against absolute sales and conveyances, where the circumstances of oppression and undue advantage taken by the creditor of the debtor's condition has been held to constitute actual fraud.

In the case at bar, there can be no difficulty in arriving at a satisfactory conclusion. The testimony of Moulton is not only strongly corroborated, but is wholly undenied by the plaintiff. Some apparent contradictions and want of memory on the part of Moulton are sufficiently accounted for by his age, his apparent lack of knowledge of proper business methods, and his evident confidence in plaintiff's integrity.

If any shadow of doubt rested upon the testimony of defendants Moulton and McCloud, it was entirely removed by the testimony of the witness Larsen, to whom plaintiff stated that " he had lent some money and got the land, and all he wanted out of it was his money and interest." But stronger still is the evidence, furnished by his own accounts, showing that he not only charged Moulton for recording a deed to himself which he now claims to have been a deed absolute, but also charged his vendor annually the interest at ten per cent upon the whole of the

purchase-money which he paid, and which interest he received year after year; and on the thirteenth of October, 1890, only two months before the commencement of the action, the total indebtedness charged up by plaintiff amounted to the sum of $8,255.15. As I view this evidence, it is not strange that he did not go upon the stand to rebut the evidence he had piled up against himself.

The specifications of errors of law occurring at the trial require but little notice. The relation Mr. McCloud bore to Mr. Moulton and to the ranch could not affect the result of the case. If the deed to plaintiff was an absolute conveyance, and not a mortgage, he would have been entitled to recover, whatever might have been the relation of Mr. McCloud to the property or to Mr. Moulton; nor could such relation affect plaintiff's security if it were a mortgage.

As to the assessment list put in evidence by plaintiff, defendants' objection was properly overruled. It was defendant Moulton's duty to have listed his land, subject to the mortgage; while it was equally the duty of the plaintiff to have returned his mortgage security for taxation, and Mr. Moulton would have been liable only for the tax upon any excess of the assessed value of the land over the amount of the mortgage. As it had some tendency to show that Mr. Moulton did not consider the land his at that time, even though inconclusive and susceptible of explanation, the evidence was properly received.

The exclusion of defendant Moulton's book, considered as the admission of plaintiff, the witness having testified that he took it down at plaintiff's dictation, was error; but as the same facts were shown by defendants from plaintiff's account-book, they were not prejudiced.

Respondent contends, however, that appellants' notice of motion was to set aside the *judgment*, and that a proceeding for a new trial must be aimed at the *decision*, and cites *Sawyer* v. *Sargent*, 65 Cal. 259, in which the notice was, that defendant "intends to move the court to vacate and set aside the *judgment*, and to *ask* the

court for a new trial," etc.  The notice was held insufficient.

In the case at bar, the notice is: " You will please take notice that the defendants, and each of them, intends to move the court to set aside and vacate the judgment rendered and entered herein, and to grant a new trial in this case upon," etc.

In *Bauder* v. *Tyrrel*, 59 Cal. 99, it was held that it was not necessary for the notice of intention to move for a new trial to contain in terms a notice of intention to move that the decision should be vacated; that the order granting a new trial does of itself vacate the decision.

This case was cited and followed in *Heinlen* v. *Heilbron*, 71 Cal. 557, in which the notice was, that defendants would " make and submit to said court above named a motion for a new trial of said cause," designating the grounds of the motion.  If, therefore, as was held in *Bauder* v. *Tyrrel*, 59 Cal. 99, it was not necessary that the notice in terms included the vacation of the decision, the notice in the case at bar is sufficient, and that part of the notice referring to the vacation of the judgment may be treated as surplusage; for if that part of the notice were stricken out, it would leave the notice precisely within the case of *Heinlen* v. *Heilbron*, 71 Cal. 557.

But the case of *Sawyer* v. *Sargent*, 65 Cal. 259, upon which respondent relies, has been virtually overruled by the late case of *O'Connell* v. *Main etc. Hotel Co.*, 90 Cal. 518.  There the objection to the notice was, that it did not formally give notice that a new trial would be asked for, and instead gave notice that defendant would move to set aside the *decision*.  This court there held that if the notice distinctly and unmistakably gave the information that a new trial was asked for, it must be held sufficient, and pertinently asked: " Could any attorney imagine such a motion based upon the ground of insufficiency of the evidence, or errors of law occurring at the trial, or for newly discovered evidence, and made upon a statement of the case, unless it were a motion for a

new trial under the statute authorizing and requiring these things?" Under these authorities, the notice of motion for new trial in the case at bar must be held sufficient.

Respondent's objection that the indebtedness of defendant Moulton was not evidenced by any writing is fully answered by the case of *Husheon* v. *Husheon,* 71 Cal. 407, where it was held that no accompanying written promise on the part of the mortgagor is necessary.

Respondent further contends that defendants cannot be heard to say that the deed is a mortgage, and to have it so decided, unless they offer to pay what they admit they owe.

Such offer is not necessary to the defense in an action of ejectment brought upon a deed, which was given as security, since it is well settled in this state, since the adoption of the codes, that such deed does not pass the title, and therefore the denial of the title and ownership of the plaintiff raises an issue under which the facts showing the deed to be in fact a mortgage may be proved, and when that conclusion is reached, section 2927 of the Civil Code, which declares that a mortgage does not entitle the mortgagee to possession unless authorized by the express terms of the mortgage, becomes applicable to the case. In *Smith* v. *Smith,* 80 Cal. 323, it was held that an affirmative defense that the deed relied on by plaintiff was a mortgage is covered by a denial of the plaintiff's allegation of ownership, and therefore that it was not an equitable defense which the parties could require to be first disposed of.

As the mortgage, though in the form of a deed absolute, does not give the mortgagee the right of possession, it must follow that defendant Moulton, or his grantee, McCloud, being the owner of the legal title, cannot be required to pay the debt for which the security was given, or offer to pay it, to enable him to defeat the action brought by plaintiff to recover possession.

I advise that the judgment and order denying de-

fendants' motion for a new trial be reversed, and a new trial granted.

FOOTE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are reversed, and a new trial granted.

HARRISON, J., GAROUTTE, J., PATERSON, J.

Hearing in Bank denied.